**Albert HAWTHORNE, Plaintiff,**

v.

**SEARS TERMITE & PEST
CONTROL, INC.
Defendant.**

No. CIV.A.01–F–1336–N.

United States District Court,
N.D. Alabama.
Northern Division.

March 3, 2003.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

### I. INTRODUCTION

Plaintiff, Albert Hawthorne ("Hawthorne"), filed a Complaint (Doc. # 1) on November 14, 2001, bringing claims of race discrimination arising out of several alleged decisions not to promote him, constructive discharge, and disparate impact pursuant to 42 U.S.C. § 2000e, *et seq* ("Title VII"). On December 26, 2001, Defendant, Sears Termite & Pest Control, Inc. ("Sears"), filed an Answer to Complaint (Doc. # 7). This cause is presently before the Court on Defendant's Motion for Summary Judgment (Doc. # 15) filed on December 11, 2002, and the Motion to Strike Affidavit of Sandra Jackson (Doc. # 23), which Sears filed on January 10, 2003. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court finds, for the reasons set forth in this Memorandum Opinion and Order, that Sears' Motion for Summary Judgment is due to be GRANTED and the Motion to Strike Plaintiff's Affidavit is due to be GRANTED in part and DENIED AS MOOT in part.

### II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

#### A. The Parties

Hawthorne is a man with varied work experience ranging from being a bricklayer[1] to a salesman to a pastor. He served in the military for a significant period of time. His first foray into sales was as a sales person for a Heilig–Meyer furniture store. After a time, he left furniture sales and took a sales position with Orkin in approximately 1997. This was his first experience with the pest control business, but Orkin provided an extensive two month training program. Hawthorne worked with Orkin for about a year and during that time he was not promoted. On or about August 18, 1998, Hawthorne

---

1. During part of his employment as a bricklayer, he gained supervisory experience because he was responsible for a crew of six to seven other bricklayers.

took a position with Sears, another pest control service. Hawthorne was employed continuously with Sears from that date until he resigned on or about September 20, 2000. Shortly after resigning from Sears, he took a sales position with Cook's, another pest control service. He is presently employed in insurance sales.

Sears formerly operated a nationwide pest control business. Its operation included an office in Montgomery, Alabama. In September of 2001, Sears ceased operating its pest control business and closed all related facilities including the Montgomery, Alabama office. When Sears shut down its pest control business, it terminated the employment of all of its remaining employees.

B. Hawthorne's Employment with Sears

Hawthorne applied for employment with Sears in July of 1998. In August of 1998, Sears offered Hawthorne a position as a Sales Tech/Sales Consultant, which he accepted. This position was similar to the one he had held with Orkin for about a year prior to his employment with Sears. Hawthorne's duties with Sears initially included creating jobs, selling jobs, and completing the production work on the jobs on which he sold pest control. Initially, Hawthorne reported to Steve Davis ("Davis"), Zone Supervisor, and to Brad King ("King"), Zone Manager. Rick Wakenigg ("Wakenigg") was the Regional Sales Manager above Davis and King.

Hawthorne's employment with Sears was not marred by disciplinary actions against him or criticism from his supervisors. Hawthorne's sales performance was frequently commended. He received numerous awards and complimentary correspondence from the company president. Because Hawthorne's compensation was based in part on commissions for sales, Hawthorne's sales success cause him to conclude that his compensation on occasion exceeded many other employees of Sears, including those in his supervisory chain. Hawthorne never made any complaints about any problems during his tenure with Sears.

Just short of one year after Hawthorne began working for Sears, his supervisor, Davis, moved to Arizona. Hawthorne applied for promotion to the position Davis had previously held. He took a test and performed well enough on the test that Wakenigg and King decided to promote Hawthorne to Zone Supervisor in July of 1999. Hawthorne's promotion did not release him from his previous responsibilities as a Sales Tech; rather, the promotion meant that he was responsible for some additional duties such as training and supervision of sales employees in the Montgomery office. For these additional duties, Hawthorne received an additional two percent of the sales of the entire office as a commission. In this lawsuit, Hawthorne has expressed no complaints about race discrimination during his tenure as a Zone Supervisor. In November or December of 1999, Hawthorne was asked to temporary fill in as the Zone Manager for the Montgomery Office after King was transferred. During this time Wakenigg made the decision to increase Hawthorne's commission base again to compensate him for undertaking the additional responsibilities.

In approximately January of 2000, Sears restructured the organization of its pest control business. This restructuring resulted in the elimination of some manager positions and most supervisor positions. The restructuring altered the management structure of Sears' operations nationwide; many employees across the country felt its impact. As a result of this restructuring, Hawthorne's position as a Zone Supervisor was eliminated and he returned a position as a Sales Tech. This change in job title

and responsibilities did not affect Hawthorne's pay. Hawthorne understood then and understands now that this restructuring was nationwide in scope, and he does not contend that its purpose was to remove him specifically from his position. Consequently, he has not made a claim in this lawsuit that his demotion was discriminatory.

Sears' restructuring of management-level positions resulted in the creation of a previously unknown position of Sales Process Manager. This position called for supervision of the sales portion of an entire zone. It required significant management skills and had extensive duties beyond those performed previously by Sales Techs and Zone Supervisors. Hawthorne made repeated applications to the Sales Process Manager position on various occasions between January of 2000 and his September 2000 resignation. He was never promoted to this position. In his lawsuit, he contends that Sears' repeated decisions not to promote him to this position constituted discrimination against him on the basis of his race. His evidence of this arises from his belief that he was more qualified than the persons Sears hired for this position [2] and from Sears' repeated failure to select him for the position. He admits that he has no evidence that anyone at Sears ever said that the Sales Process Manager position should not be given to an African–American. He admits that he has no evidence that the persons he suspects [3] made the decision not to promote him ever mentioned his race, used a racial slur, or made racially derogatory comments about African–Americans.

The first time a person received a Sales Process Manager position which Hawthorne wanted was when Sears promoted a Caucasian male named Snyder, who transferred to the Montgomery Office. Hawthorne admits that this occurred more than six months before he resigned in September of 2000, and that it could have been as long as ten months prior to that time. Despite alleging in his Complaint that he was making a claim about Snyder's promotion to this position, Hawthorne testified at his deposition that he is not complaining about Sears' decision to give the position to Snyder as a part of his failure to promote claim. Snyder soon transferred to Louisiana, and the Sales Process Manager position in Montgomery was again available. Once again, Hawthorne's Complaint makes it seem as if the promotion decision Sears made after Snyder left is part of the case before this Court, but Hawthorne's deposition testimony belies this fact. Sears filled the position with a Caucasian male whose name Hawthorne does not recall.

Hawthorne did claim that he should have been promoted to fill the Sales Process Manager position instead of Chuck Blenco. Although Hawthorne cannot recall specifically when Blenco was promoted to the position, he believes that it was at least six months before his resignation. Sears' records reveal that Blenco received the position as a Sales Process Manager on May 22, 2000. Hawthorne claims that Blenco's promotion to the position over him constituted race discrimination. Hawthorne judges his own qualifications for the position to be superior to Blenco's

---

**2.** Hawthorne admits that he does not know all the specifics of the qualifications of the other employees who received the position, but instead points to instances where he believes these individuals displayed what he considered ignorance about the termite business.

**3.** Hawthorne is not certain who made the decisions not to promote him and thereby discriminated against him. He suspects that it might have been Wakenigg, Ron Webber ("Webber"), or perhaps Webber and Wakenigg together.

qualifications, but admits he does not know Blenco's qualifications. Hawthorne bases his judgment that his qualifications were superior to Blenco's on his belief that his sales figures were superior to Blenco's and on the fact that on one occasion Blenco was unable to distinguish between a monolithic slab and a crawlspace slab. Sears asserts that it selected Blenco for the position because his qualifications were superior to Hawthorne's in that he had more managerial experience, had performed better as a Zone Supervisor, and met all the requirements on the job description for the Sales Process Manager position.

In August of 2000, Blenco decided to return to Florida. He announced this decision to leave the Sales Process Manager position in the Montgomery Office before he actually left the position. Knowing that the position would be vacant, Hawthorne made it clear to all who would listen that he was interested in promotion to the Sales Process Manager position. He discussed this desire with Wakenigg, who told him to put it in writing.[4] Hawthorne contends he immediately wrote a letter expressing his interest in the promotion. Hawthorne became concerned that Wakenigg had not responded to his written request for the promotion so he sought out Wakenigg's supervisor, Webber to discuss his desire for promotion. Webber told Hawthorne that filling the job was not a priority at that time. Despite the fact that Hawthorne had seen an internal memorandum indicated that the target date for filling the Sales Process Manager position was not until October 31, 2000, he interpreted Webber's statement that filling the position was not a priority in a negative fashion. Indeed, Hawthorne decided that the only reason that Webber indicated that filling the position was not a priority was that Hawthorne was the person seeking it.

Nevertheless, Hawthorne did not give up his pursuit of the position. He went back to Wakenigg and asked for three minutes of his time in which to persuade him that Hawthorne was the person for the Sales Process Manager position. Hawthorne explained why he felt he was the best person for the job. According to Hawthorne,[5] Wakenigg's response was only to point out that Hawthorne's three minutes were up. After this conversation, Hawthorne believed he would not be promoted to the position of Sales Process Manager. He admits that he had not been told this directly, but he felt he could "read between the lines" and discern that Wakenigg had decided not to promote him based on this response. Hawthorne was very upset and did not feel that he could continue to work at Sears under the circumstances.

On or about September 18, 2000, Hawthorne told two co-workers to come check him out of his truck because he had decided to resign. Through and including the date of his resignation, Hawthorne never made a formal complaint against Sears or his supervisors in which he contended he had been subjected to race discrimination. Despite his failure to complain of anything other than unfair treatment prior to his resignation,[6] Hawthorne had made up his mind prior to resigning that he had been

---

4. Hawthorne does not contend that it was unreasonable for Sears to require him to express his interest in promotion to this position in writing.

5. Wakenigg disputes this, but for purposes of this motion, the Court views the facts in the light most favorable to Hawthorne, the non-movant, and accepts Hawthorne's account.

6. Hawthorne admits he received information and training during his employment with Sears on its policies regarding "Fair Treatment in the Workplace" and on reporting employment problems to Human Resources. Nevertheless, he admits he did not complain to about race discrimination prior to resigning from Sears.

discriminated against on the basis of his race by Sears' failure to promote him to the position of Sales Process Manager. He was so upset about not receiving a promotion to which he felt entitled that he could no longer stand to work for Sears and these feelings made him feel forced to resign.

In January of 2001, Sears filled the Sales Process Manager with David Osburn. Hawthorne learned that Osburn had been promoted to the position from a friend who still worked at Sears. He was upset because he had helped to train Osburn and because Osburn had not been with Sears for very long. Hawthorne believes that his qualifications for the position are far superior to those of Osburn, but he admits that he was not a candidate for the Sales Process Manager position when Sears selected Osburn because he had resigned months earlier.

*C. Relevant Events After Hawthorne Resigned from Sears*

On March 6, 2001, Hawthorne signed a sworn Charge of Discrimination against Sears. On March 9, 2001, the Equal Employment Opportunity Commission ("EEOC") received Hawthorne's Charge of Discrimination. After a few months, Hawthorne's counsel requested a Notice of Right to Sue from the EEOC. On September 4, 2001, the EEOC mailed a copy of the Notice of Right to Sue to Hawthorne and his attorney.

*D. The Lawsuit*

On November 14, 2001, Hawthorne filed a Complaint against Sears. (Doc. # 1). The Complaint set forth a statement of certain predicate facts and two substantive counts. Count One alleges a violation of Title VII arising out of Sears' failure to promote Hawthorne to the position of Sales Process Manager. It does not specify the date or dates of the alleged failure to promote Hawthorne. Count Two alleg-

es another violation of Title VII for the alleged disparate impact caused by a particular employment practice. The Complaint points to Sears' alleged practice of hiring white males as the practice which resulted in the alleged disparate impact. While there is not a separate count for it, Hawthorne complains in his factual narrative about alleged constructive discharge from his employment with Sears. Compl. at ¶ 13.

On December 26, 2001, Sears filed its Answer to Complaint. (Doc. # 7). Subsequently, Sears filed Defendant's Motion for Summary Judgment. (Doc. # 15). In that motion, Sears argues that it is due summary judgment on all of Hawthorne's claims. It contends that Hawthorne has abandoned his constructive discharge and disparate impact claims. It further asserts that Hawthorne's claims relating to several promotional decisions are barred by his failure to timely file a Charge of Discrimination with the EEOC with respect to those decisions. Furthermore, Sears contends that Hawthorne cannot establish a *prima facie* case with respect to his failure to promote claims and that it based its promotional decisions on legitimate, non-discriminatory reasons having nothing to do with Hawthorne's race. Hawthorne's lawyer submitted his opposition to Sears' motion for summary judgment arguing that Hawthorne's failure to promote claims should survive summary judgment. (Doc. # 22). This submission included an affidavit from Sandra Jackson. Sears filed a Motion to Strike Affidavit of Sandra Jackson (Doc. # 23). These motions are now fully briefed and under submission.

## V. DISCUSSION

*A. Hawthorne's Claims of Constructive Discharge and Disparate Impact*

Hawthorne's Complaint contained allegations arguably supporting a claim for

constructive discharge[7] and a claim for alleged disparate impact pursuant to Title VII. At the outset, the Court notes that Sears' motion for summary judgment and Hawthorne's response to it have somewhat narrowed the scope of issues in this case. Sears has pointed out an absence of evidence to support Hawthorne's constructive discharge and disparate impact claims and argued that under the facts of this case it was entitled to judgment as a matter of law on these claims. Upon this showing by Sears, the burden shifted to Hawthorne to designate specific facts material to these claims illustrating a dispute necessitating trial or to refute Sears' claim to be entitled to judgment as a matter of law. Hawthorne's submissions in opposition to Sears' motion for summary judgment do not address the disparate impact claim. Moreover, at the Pretrial Conference before this Court, the parties stipulated that Hawthorne was not pursuing the disparate impact claim.

The constructive discharge claim received scant mention in Hawthorne's summary judgment submissions. In the factual recitation, Hawthorne states that he "felt he was constructively discharged because he could not work under the conditions anymore." (Doc. # 22 at p. 5). Nevertheless, Hawthorne makes no attempt to address the "constructive discharge" in the argument section of his brief or to point to any legal authority under which his subjective feelings of that he couldn't work under the conditions constitute an actionable constructive discharge. At the Pretrial Conference in this case, Hawthorne's counsel stated that there was no specific claim of constructive discharge, but that he planned to offer some evidence of it. This concession, while short of a stipulation that the claim has been abandoned, does seem to indicate that Hawthorne is not pursing "constructive discharge" as a separate legal theory in this case.[8]

There is no burden upon a district court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is on the parties to formulate arguments. *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990), *reh'g denied*, 921 F.2d 283 (11th Cir.1990); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1286 (M.D.Ala.2001). In light of Hawthorne's failure to address these claims in opposition to Sears' motion for summary judgment on them and his concessions through counsel at the Pretrial Conference, the Court finds that the claims have been abandoned. Additionally, the Court finds that the evidence before this Court make it plain that there are no genuine issues of material fact relating to these claims and that Sears is entitled to judgment as a matter of law on them. Consequently, Defendant's Motion for Summary Judgment is due to be GRANTED with respect to Hawthorne's constructive discharge and disparate impact claims. The Court will not address these claims which Hawthorne has abandoned any further, and the Court will focus instead on

---

7. The Complaint does not contain a separate count for "constructive discharge" and it is not clear whether such a claim is made in the case.

8. Indeed, an attempt to pursue this type of claim would have been an act of futility as

Hawthorne's proffered evidence regarding his subjective belief alone is insufficient as a matter of law to support a constructive discharge. *See, e.g., Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1231 (11th Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002).

the race discrimination claims urged by Hawthorne's counsel in opposition to Defendant's Motion for Summary Judgment.

### B. Hawthorne's Claims of Disparate Treatment by Failure to Promote

#### 1. Timeliness of Hawthorne's Charge of Discrimination With the EEOC

On March 9, 2001, Hawthorne's Charge of Discrimination alleging race discrimination arrived at the EEOC. Hawthorne alleges, and Sears does not dispute, that Hawthorne filed this lawsuit within ninety days of his receipt of the EEOC's Dismissal and Notice of Rights letter relating to his Charge of Discrimination. Sears does not concede, however, that Hawthorne has satisfied all of the procedural prerequisites to bringing his claims pursuant to Title VII.

■ Sears argues that some of Hawthorne's claims arising out of certain promotional decisions are barred because Hawthorne failed to file a timely charge of discrimination with the EEOC. Hawthorne contends that the allegedly untimely claims can be litigated because the "discrimination is of a continuous nature." (Doc. 22 at p. 7). Hawthorne's argument is unavailing because the United States Supreme Court recently eschewed the use of the continuing violation doctrine in Title VII employment discrimination cases and essentially redefined the application of statutes of limitations to such cases. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[9]

■ All of Hawthorne's claims in this lawsuit are brought pursuant to Title VII. Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action under Title VII. *See Morgan,* 122 S.Ct. at 2070. According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-(5)(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir.2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

■ The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* Indeed, this procedural rule, is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,*

---

**9.** Even before the Supreme Court's decision in *Morgan,* the law was well-settled in the Eleventh Circuit that the continuing violation doctrine did not apply to discrete promotion decisions made at various points in time prior to the filing of the Charge of Discrimination. *See, e.g., Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 800–01 (11th Cir.1988), *modified by,* 850 F.2d 1549, 1550–51 (11th Cir.1988).

466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Thus, if a plaintiff fails to file an EEOC charge before the 180–day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Brewer v. Alabama,* 111 F.Supp.2d 1197, 1204 (M.D.Ala. 2000).

Of course, the determination of whether a plaintiff has filed a timely EEOC depends on when the alleged unlawful employment practice "occurred." The United States Supreme Court recently provided further clarification of the nature of this inquiry and set forth different standards for claims involving "discrete acts" and "hostile environment" allegations. *See generally, Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106.

■ In cases involving discrete discriminatory acts, such as termination of employment, failure to promote, denial of transfer, or refusal to hire, a discrete discriminatory act occurs on the day that it happens. *Morgan,* 122 S.Ct. at 2070, 2073. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 2073. Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. Each such act starts a new clock for filing charges. *Id.* Consequently, Hawthorne can only litigate his claims arising out of an allegedly discriminatory failure to promote him if he made a proper complaint to the EEOC within 180 days of the promotional decision he seeks to challenge. *See, e.g., Morgan,* 122 S.Ct. at 2070, 2073.

■ In the present case, Hawthorne filed his EEOC charge on March 9, 2001. Therefore, the Charge is timely only if the unlawful employment actions of which he complains "occurred" on or after September 10, 2000. *See, Morgan,* 122 S.Ct. at 2070 (holding that a party must file an EEOC charge within 180 days from the date the unlawful act occurred or lose the ability to recover for it). In his deposition testimony, Hawthorne identified three occasions on which he was denied promotion to the Sales Process Manager position which he is litigating in this action: (1) Sears' decision to promote Blenco instead of Hawthorne; (2) Sears' failure to promote Hawthorne during the period between Blenco's announcement that he would be vacating the position to return to Florida and Hawthorne's voluntary resignation; and (3) Sears' decision to promote Osburn to the position several months after Hawthorne resigned his employment with Sears. The undisputed evidence before this Court establishes that Sears promoted Blenco to the Sales Process Manager more than 180 days before Hawthorne filed his EEOC Charge. Consequently, Hawthorne cannot proceed with a claim against Sears for its decision to promote Blenco rather than him, and Sears is entitled to judgment as a matter of law on this claim.[10] With respect to the remaining two instances on which Hawthorne would rely, the Court finds that Hawthorne's Charge of Discrimination was timely made.

---

**10.** To the extent that Hawthorne's contentions in connection with the proposed pretrial order evidence an intention to pursue claims for promotional decisions to the Sales Process Manager position which occurred prior to Sears' promotion of Blenco, despite Hawthorne's disavowal of such claims in his deposition testimony, the Court finds that such claims must be dismissed for the same reasons as his claims regarding Blenco's promotion. These discrete promotional decisions occurred more than 180 days prior to the filing of Hawthorne's Charge of Discrimination with the EEOC and are not actionable pursuant to Title VII.

Consequently, the Court will address the merits of these claims.

### 2. Hawthorne's Claims Arising Out of Sears' Failure to Promote Him After Blenco's Announcement He Was Leaving

██ An employee bringing a claim under Title VII must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny, or by introducing statistical evidence of discrimination. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir.1995). Because Hawthorne has presented neither statistical evidence, nor direct evidence to support his claims of discrimination, the Court will address only Hawthorne's circumstantial evidence.

To establish a discrimination claim by circumstantial evidence using the *McDonnell Douglas* framework, the employee has the initial burden of showing by a preponderance of the evidence a *prima facie* case of the proscribed practice. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The essence of the *prima facie* case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the factfinder that the employer used prohibited criteria in making an adverse decision about the employee. If established, the *prima facie* case raises a rebuttable presumption that the employer is liable to the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).

██ An employee using circumstantial evidence to make his claim of discrimination in promotion may establish a *prima facie* case by showing that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion;[11] (3) he was rejected in spite of his qualifications; (4) the position went to a person who was not a member of a protected class or the employer continued to attempt to fill the position after rejecting the employee's application. *See, e.g., Walker v. Mortham,* 158 F.3d 1177, 1193 (11th Cir.1998); *Crawford v. Western Elec., Co.,* 614 F.2d 1300, 1315 (5th Cir.1980)[12]; *Williams v. Alabama Indus. Dev. Training,* 146 F.Supp.2d 1214, 1219 (M.D.Ala.2001); *Mays v. Union Camp Corp.,* 114 F.Supp.2d 1233, 1239 (M.D.Ala.2000).

██ It is undisputed that Hawthorne is a member of a protected class who had applied for a position as a Sales Process Manager for Sears at the time Sears knew that it was about to have an opening in that position due to Blenco's impending return to Florida. The Court finds that a

---

11. When considering whether an employee is qualified for a promotion at the *prima facie* stage of the *McDonnell Douglas* analysis, the Eleventh Circuit has expressly prohibited the practice of comparing the relative qualifications of the applicants. *See Walker,* 158 F.3d at 1192. Indeed the relevant inquiry is whether the employee is himself minimally qualified. *Id.* at 1193. *Accord, Burney v.*

Rheem Mfg. Co., 196 F.R.D. 659, 670 (M.D.Ala.2000).

12. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

reasonable factfinder could, on the basis of the record, determine that Hawthorne was minimally qualified [13] for the position of Sales Process Manager.

The remaining two elements of the prima facie case are more complicated in the context of the facts underlying this action. With respect to the fourth element of the *prima facie* case, the Court finds that because the position was not filled prior to Hawthorne's resignation, which effective revoked his application for the position, Hawthorne cannot establish a *prima facie* case by relying on Sears' decision to fill the position with a Caucasian employee in January of 2001. Nevertheless, as other courts have recognized, a plaintiff articulating a failure to promote claim may also establish a *prima facie* case by showing that the employer continued to seek application after the plaintiff's application. The evidence before this Court on whether Sears did so is nearly non-existent. Hawthorne has not offered any evidence from which a reasonable factfinder could discern whether anyone, including Osburn, submitted an application *after* Hawthorne's application. Sears has offered evidence that it was still considering Hawthorne's application at the time of his resignation and that thereafter the position remained open until January of 2001. The Court will consequently, assume *arguendo* that Sears continued to seek applicants for the position of Sales Process Manager after learning of Hawthorne's interest in the position and that Hawthorne has sufficient evidence to satisfy the fourth element of the *prima facie* case.

Thus, the only element of the *prima facie* case which remains is the third element, namely, whether Hawthorne has offered evidence from which a reasonable jury could find that Hawthorne was rejected for the position of Sales Process Manager between his application upon hearing Blenco was returning to Florida and his resignation in September of 2000. The Court finds that on the basis of the evidence before it no reasonable factfinder could find that Sears rejected Hawthorne's application for the Sales Process Manager prior to his resignation. For this reason, Hawthorne fails to establish a *prima facie* case of race discrimination with respect to his application for promotion to Sales Process Manager in September of 2000.

Sears has put undisputed evidence before this Court that Wakenigg was still considering Hawthorne's application up until the time that he resigned. Moreover, Hawthorne admits that no one ever told him that he was not going to get the Sales Process Manager job. Hawthorne states in a most conclusory fashion in the argument section of his brief in opposition to summary judgment that he has established that Sears rejected his application. (Doc. 22 at p. 6). Given Hawthorne's bare assertion, the Court can only guess at which facts in Hawthorne's factual submissions arguably support this statement. It would appear that Hawthorne is relying on the

---

13. Sears argues that the evidence before this Court establishes that Hawthorne was not minimally qualified for the position. Sears correctly notes that Hawthorne has not argued his qualifications for the position based on the job description for the Sales Process Manager and presents sworn testimony from Wakenigg to the effect that Hawthorne was not qualified. On the other hand, Hawthorne points to evidence before this Court of his stellar sales performance with Sears, his knowledge of the termite business, the respect other employees had for him, and his supervisory experience during his time as a Zone Manager and his temporary stint as a Zone Supervisor. Moreover, Sears' admission that it considered Hawthorne for the position leads to the inference that even Sears believed that he had the minimal qualifications for the job. *See, e.g., Gaddis v. Russell Corp.*, No. CIV.A. 02–A–22–N, 2003 WL 169946 at * 6 (M.D.Ala. Jan.22, 2003). Thus, Hawthorne has sufficient evidence to satisfy this element of the *prima facie* case.

following facts to establish that his application for the promotion was rejected prior to his resignation: (a) he verbally expressed his interest in promotion to Wakenigg after learning that Blenco would be leaving; (b) upon Wakenigg's instructions he put his interest in writing; (c) he verbally expressed his interest in promotion to Wakenigg's supervisor, Webber, in September, but Webber responded that filling the position was not a priority at that time [14]; (d) he asked Wakenigg for three minutes to explain to Wakenigg why he should be given the promotion and after listening to Hawthorne's arguments Wakenigg said something to the effect of Hawthorne's three minutes were up [15]; and (e) the background evidence that Hawthorne had previously sought promotion to the Sales Process Manager position, but had not been selected for it because Sears chose other candidates all of whom were Caucasian and some of whom Hawthorne concedes were qualified for the position.[16]

Even when viewed in the light most favorable to Hawthorne, these facts and the justifiable inferences flowing from them cannot be said to create a reasonable basis for a factfinder to determine that Sears rejected Hawthorne's application for promotion prior to his resignation. *See, e.g., Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 222 (2nd Cir.2001) (affirming summary judgment for employer on failure to promote claim where plaintiff failed to offer any evidence that she had been denied a promotion prior to her resignation); *Bempah v. Kroger Co.,* Civ. No. 488–200, 1989 WL 150019 at *7 (S.D.Ga. June 5, 1989) (holding as a matter of law that employee suffered no adverse employment action in support of failure to promote claim where the employee resigned prior to rejection of his pending application for promotion). Hawthorne's own subjective interpretation of these events is not a justifiable one; rather, it can only be seen as an assertion based on a hunch unsupported by significant probative evidence; such evidence cannot defeat Sears' motion for summary judgment. *See, e.g., Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1198 (11th Cir.1997) (holding that plaintiff's assertions based on no more than unsupported hunches were insufficient to avoid defendant's motion for summary judgment); *Blount v. Alabama Coop. Extension Serv.,* 869 F.Supp. 1543, 1553 (M.D.Ala.1994) (a plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate"). Hawthorne's failure to present sufficient evidence of all elements of the *prima facie* case requires summary judgment in Sears' favor on Hawthorne's failure to promote claim.

 Nevertheless, even if the Court were to assume that Hawthorne had

---

**14.** This response was completely consistent with the internal memorandum, setting a goal for filling the position by *October 31, 2000,* which Hawthorne surreptitiously spied. It is further consistent with the undisputed fact that the position was not filled until January of 2001, despite Hawthorne's resignation. Hawthorne's rather perverse view that this response somehow establishes that Sears was in a hurry to fill the position until he made his interest in the promotion known defies common sense and cannot be said to constitute a justifiable inference from these facts.

**15.** Although Wakenigg does not recall such a statement, we view Hawthorne's account of the conversation in the light most favorable to him and assume for purposes of this motion that his recollection of the conversation is correct.

**16.** While the earlier promotional decisions are not actionable in this case due to Hawthorne's failure to timely file a Charge of Discrimination with the EEOC, such events can be considered as "background evidence" in support of Hawthorne's timely claim. *See, e.g., Morgan,* 122 S.Ct. at 2072.

made out a *prima facie* case of race discrimination arising out of Sears' failure to promote him after Blenco announced his intention to leave the Sales Process Manager's position, Hawthorne's case cannot survive Sears' motion for summary judgment. Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F.Supp.2d 1314, 1321 (M.D.Ala.2001).

■■■■■ If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision"). Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F.Supp.2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc* )).

■■■ Sears has satisfied its burden of producing a legitimate, non-discriminatory reason for its failure to take immediate action on Hawthorne's request for a promotion after it learned that Blenco would be vacating the position of Sales Process Manager, and Hawthorne has failed to offer sufficient evidence to permit a reasonable factfinder to conclude that Sears' reasons were a pretext for discrimination against him on the basis of his race. The undisputed evidence before this Court demonstrates that less than one year prior to Blenco's announcement Sears had found it necessary to cut numerous managerial positions. Moreover, Sears has established that it did not feel an urgent need to replace Blenco when he announced that he would be returning to Florida and vacating the Sales Process Manager position in the Montgomery Office because Blenco was not leaving immediately. Importantly, Hawthorne admits that he began his campaign to seek the promotion before Blenco had returned to Florida.

While it is clear that Hawthorne urgently desired promotion into this position, there is no evidence before this Court that Sears urgently needed to fill this position. As Hawthorne admits, Sears' initial goal for filling the position Blenco was vacating was October 31, 2000, approximately six weeks after Hawthorne voluntarily resigned and more than two months before Sears promoted Osburn into the position. Nevertheless, Hawthorne resigned well before to the target date Sears set to fill the position without waiting to see what would happen with his pending application. Hawthorne asserts that the pendency of his application was the reason that Sears delayed in filling the position until after he was gone; however, in the absence of supporting evidence, Hawthorne's conclusory asserts are insufficient to withstand summary judgment. *See, e.g., Holifield,* 115 F.3d at 1564 n. 6. Moreover, the justifiable

inference from the fact that Sears did not actually fill the position until January of 2001, several months after Hawthorne's resignation, is that Sears did not have an urgent need to fill the Sales Process Manager position, not that Sears was trying to avoid having to promote Hawthorne. Hawthorne fails to offer evidence sufficient to permit a reasonable factfinder to conclude that Sears' legitimate, non-discriminatory reasons are pretextual and Sears is entitled to judgment as a matter of law.

Despite his deposition testimony to the contrary, Hawthorne concedes that he is not pursuing a separate claim in this suit arising from Sears' decision to promote Osburn in January of 2001 in his brief in opposition to summary judgment.[17] (Doc. # 22 at p. 8). Instead, he offers evidence of Sears' decision to promote Osburn after his resignation in an attempt to show that it acted with improper intent when it did not promote Hawthorne prior to his resignation. This argument relies in part on Hawthorne's contention that he was far more qualified for the position than was Osburn, a Caucasian. The Court cannot find that this evidence assists Hawthorne in defeating Sears' Motion for Summary Judgment. This evidence does not create a genuine issue of material fact as to whether Sears' proffered legitimate, non-discriminatory reason was a pretext for discrimination.

### C. Sears' Motion to Strike

 The Court now turns to the Motion to Strike Affidavit of Sandra Jackson (Doc. # 23). Federal Rule of Civil Procedure 56(e) makes it plain that affidavits submitted in opposition to a motion for summary judgment, such as the affidavit at issue here,

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e). The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *See, e.g., Story v. Sunshine Foliage World, Inc.,* 120 F.Supp.2d 1027, 1030 (M.D.Fla.2000). *Accord, Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000). Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *Givhan v. Electronic Eng'rs, Inc.,* 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). However, if an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit. *Id.* at p. 1334 n. 2.

 Sears has identified numerous statements in Jackson's affidavit which it contends are improper. The Court finds that the following statements are due to be STRICKEN for failure to comport with the dictates of Rule 56(e) and the relevant case law applicable to appropriate summary judgment affidavits:

- Jackson's statement that "[i]t was obvious that [Mr. Wakenigg] was not considering Mr. Hawthorne for the

---

17. Hawthorne is wise to argue this evidence as something other than a separate claim for failure to promote. Hawthorne admits that after his resignation he was no longer in contention for the Sales Process Manager position. For this reason, Hawthorne cannot establish a *prima facie* case of discrimination with respect to Sears' decision to promote Osburn *months after Hawthorne's resignation.* The selection of Osburn was not a rejection of Hawthorne because at the time Sears selected Osburn for promotion Hawthorne was no longer in contention for the position because he had resigned.

promotion from what he said and his tone of voice"

- Jackson's statement that "the only possible reason for Mr. Hawthorne not being promoted was because of his race-African-American."

The Court agrees that these statements constitute improperly conclusory assertions rather than statements of fact based properly on Jackson's personal knowledge. Jackson did not have access to Wakenigg's thought processes and her testimony regarding the true meaning of his statement constitutes conclusory speculation. Similarly, Jackson lacks personal knowledge or an adequate basis for any testimony regarding the reasons Sears failed to promote Hawthorne prior to his resignation. Consequently, her opinion as to what the only possible reason Sears had for its decision not to promote Hawthorne is improperly conclusory and speculative. Moreover, Hawthorne cannot show that these statements should be considered because Jackson would be able to testify to them at trial. *See, e.g., Feazell v. Tropicana Prods., Inc.,* 819 F.2d 1036, 1041 (11th Cir.) (upholding exclusion of former employee's opinion testimony as conclusory and irrelevant to the issue of intentional discrimination).

While it may be true that other portions of the Affidavit of Sandra Jackson fail to comport with the requirements for such affidavits set forth by Rule 56(e) and case law interpreting it, the Court finds it unnecessary to reach the merits of Sears' motion to strike with respect to the remaining portions of this affidavit. The Court has reviewed and considered the rest of the affidavit of Sandra Jackson and finds that nothing contained in it, whether it be properly included or not, would cause this Court to deny Sears' motion for summary judgment, which for the reasons set forth in this Memorandum Opinion and Order is due to be granted. Consequently,

the remaining portions of the Motion to Strike Affidavit of Sandra Jackson are due to be DENIED as MOOT.

## VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1) The Defendant's Motion for Summary Judgment (Doc. # 15) is GRANTED.

(2) The Motion to Strike Affidavit of Sandra Jackson (Doc. # 23) is GRANTED to the extent that it seeks to exclude from evidence statements by Sandra Jackson that "[i]t was obvious that [Mr. Wakenigg] was not considering Mr. Hawthorne for the promotion from what he said and the tone of his voice" and that "the only possible reason for Mr. Hawthorne not being promoted was because of his race-African-American" and DENIED as MOOT in all other respects.

(3) The trial previously scheduled in this case is CANCELED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.